UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROSEANN V. GRECO,

                              Plaintiff,

                        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.
----------------------------------------------------------X

NOT FOR PUBLICATION

MEMORANDUM AND ORDER

07-CV-2017 (CBA)

AMON, United States District Judge:

Plaintiff Roseann V. Greco seeks review of the Commissioner of Social Security's (the "Commissioner") final decision that her retirement insurance benefit rate was correctly calculated. For the reasons stated below, the Commissioner's calculation is affirmed.

I.     Procedural Background

Greco applied for insurance benefits on May 18, 1999, about a month after she turned 62. The application was allowed on May 25, 1999, and Greco's initial monthly benefit was determined to be $367.00. Greco asked for reconsideration on April 27, 2004. On August 14, 2004, the Commissioner issued a Notice of Reconsideration and determined that the original benefit computations were correct. Greco then requested a hearing before an administrative law judge ("ALJ"), which was held on July 31, 2006. Plaintiff appeared at the hearing *pro se*, and testified. She claimed that certain (fairly negligible) earnings were omitted from the calculation, that her indexing year was 1999, not 1997, that she should have had a 34 year computation, rather than 35, and that her benefits had been reduced twice, when the only reduction should have been a one-time 20% reduction. In a decision dated December 12, 2006, the ALJ found

-1-

that Greco's benefit calculation, as detailed in the Notice of Reconsideration, was correct. The Appeals Council denied Greco's request for review, rendering the ALJ's decision the final decision of the Commissioner. This action followed.

II.   Discussion

    A.   The Commissioner's Calculation

Because Greco reached age 62 after 1978, the Commissioner calculated her benefits using the Average Indexed Monthly Earnings method. See 20 C.F.R. § 404.204(b).[1] The first step in this process was to identify Greco's "indexing" year, which is the second year before a claimant attains the age of 62. See 42 U.S.C. § 415(b)(3)(A)(ii); 20 C.F.R. § 404.211(d)(1)(ii). Greco's indexing year is therefore 1997, the second year before she turned 62 in April of 1999. Once the indexing year was determined, the Commissioner indexed Greco's earnings for each year in which she earned money, by multiplying her actual earnings for the year being calculated by the average wages of all workers in the indexing year, and then dividing that product by the average wages of all workers in the year being calculated. See 20 C.F.R. § 404.211(d). The record contains a chart showing Greco's indexed earnings for each relevant year. (R. 131-32.)

The Commissioner then determined Greco's "elapsed years", defined as the calendar years beginning in 1951 or the year in which the claimant turns 22, whichever is later, until the year before the claimant reaches 62. See 42 U.S.C. § 415(b)(2)(B)(iii); 20 C.F.R. § 404.211(e)(1). Greco's elapsed years began in 1959, the year she turned 22, and ended in 1998, the year before she turned 62. Accordingly, in Greco's case, there is a total of 40 elapsed years.

---

[1] The entire detailed calculation of Greco's benefits can be found at pp. 130-35 of the administrative record.

Then, her "benefit computation years" were determined by dropping the five years during the elapsed year period in which she had the least earnings. See 42 U.S.C. §§ 415(b)(2)(A)(i), (B)(i); 20 C.F.R. § 404.211(e)(2). The indexed earnings for these 35 years are the actual numbers with which Greco's benefits were calculated. In Greco's case, she did not earn any money in 26 out of her 40 elapsed years. Accordingly, five of the years in which she earned nothing were dropped.

Once Greco's 35 benefit computation years were determined, her indexed earnings for those 35 years were totaled (though she only earned money in 14 of them). See 20 C.F.R. § 404.211(f)(1). The Commissioner found that the sum of Greco's indexed earnings was $215,410.21. The total indexed earnings must then be divided by the total number of months in the claimant's benefit computation years. See 20 C.F.R. § 404.211(f)(2). In Greco's case, 35 benefit computation years multiplied by 12 months per year equals 420 months. Accordingly, her $215.410.21 total indexed earnings was divided by 420, resulting in an average indexed monthly earnings amount of $512.00, after being rounded down to the next lower whole dollar. See 20 C.F.R. § 404.211(f).

After the indexed monthly earnings amount is calculated, benefits are determined using the formula in the Social Security Act. See 42 U.S.C. § 415(a)(1). Pursuant thereto, certain "bendpoint" dollar amounts are determined for each year in which benefits are provided. A claimant receives benefits in the amount of 90% of their average indexed monthly earnings up to the first bendpoint, 32% of their average indexed monthly earnings between the first and second bendpoints, and 15% of the average indexed monthly earnings after the second bend point. See 42 U.S.C. § 415(a)(1)(A). The bendpoints for 1999, the year in which Greco's calculation

occurred, were $505.00 and $3,043.00. See Social Security Benefit Formula Bend Points, available at http://www.ssa.gov/OACT/COLA/bendpoints.html. (last visited 4/16/08). Accordingly, Greco's benefit was calculated by multiplying $505.00 times 90%, totaling $454.50, and adding that to 32% of the remaining $7.00, equaling $2.20. Thus, Greco's primary insurance amount (PIA), was found by the commissioner to be $456.70.

Next, the Commissioner was required to reduce Greco's benefit below her PIA because she elected to begin receiving benefits prior to reaching the full retirement age of 65. An individual who elects to receive benefits prior to full retirement age will have her monthly benefits reduced by 5/9 of 1% of the PIA multiplied by the number of months remaining prior to her reaching age 65. See 42 U.S.C. § 402(q)(1) and (9). Here, Greco elected to begin receiving benefits in May of 1999, thirty-five months prior to turning 65. Accordingly, pursuant to this formula, the Commissioner reduced her PIA by $88.90, for an initial benefit amount of $367.80.

### B. Greco's Arguments

Greco argues, as she did at her ALJ hearing, primarily that the Commissioner erred by reducing her benefit amount twice rather than taking a one-time 20% reduction, as she claims the Social Security laws mandate. Secondarily, she claims that the Commissioner failed to account for a small amount of her earnings, and that her total indexed earnings should be $216,357.61, not $215,410.21, as the Commissioner found.[2] The Court will address the latter argument first.

---

[2]To the extent that Greco's papers can be read to renew the other two arguments that she made before the ALJ, that her indexing year should be 1999, not 1997, and that there should have been 34 benefit computation years, rather than 35, her arguments are clearly without merit. With respect to the first argument, two years before 1999 was 1997, making 1997 her indexing year. See 42 U.S.C. § 415(b)(3)(A)(ii); 20 C.F.R. § 404.211(d)(1)(ii). Moreover, from 1959 to 1998 there were forty elapsed years, and when you subtract the five with the least earnings, you are left with 35 benefit computation years. See 42 U.S.C. § 415(b)(2); 20 C.F.R. § 404.211(e).

1.  Indexed Earnings

Greco disputes the Commissioner's findings regarding her indexed earnings during her benefit computation years. The Social Security Administration ("SSA") is required to maintain records of wages paid to, and the amount of self-employment income derived by, individual taxpayers, and must furnish these records to the individual on request. See 42 U.S.C. § 405(c)(2)(A); see also Butts v. Sec'y of Health and Human Servs., 706 F.2d 107, 108 (2d Cir. 1983). A claimant may challenge the SSA's wage records, but generally only do so within the prescribed time limit. See 42 U.S.C. § 405(c)(4). That time limit is three years, three months, and fifteen days after the year of the disputed earnings. See 42 U.S.C. § 405(c)(1)(B); see also Butts, 706 F.2d at 108. This time limitation was prescribed by Congress to ensure the orderly administration of social security claims. See Lasch v. Richardson, 457 F.2d 435, 440 (7th Cir. 1972) ("One need only to be reasonable to foresee the disaster in [the SSA] if there were not a reasonable time limitation for ending disputes about eligibility benefits.").

After the expiration of the time limit, the SSA's records are presumptive evidence that no other wages were paid during the period in question. See 42 U.S.C. § 405(c)(4)(B); see also Butts, 706 F.2d at 108; Lyublinsky v. Barnhart, 360 F. Supp. 2d 497, 499-500 (E.D.N.Y. 2005). "The presumption 'protects the government from spurious or merely inaccurate or unverifiable claims based on after-the-fact evidence.'" Butts, 706 F.2d at 108 (quoting Hollman v. Dep't of Health and Human Servs., 696 F.2d 13, 17 (1982)). Therefore, after the time limit expires, wage records can only be corrected under certain enumerated circumstances. See 42 U.S.C. § 405(c)(5).

A claimant challenging the SSA's wage records must prove her case by a preponderance

of the evidence. See Butts, 706 F.2d at 108 (citing Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1974) and Breeden v. Weinberger, 493 F.2d 1002, 1006 (4th Cir. 1974)); Lyublinsky, 360 F. Supp. 2d at 500. Here, Greco claims that certain earnings from the late 70s and early 80s were omitted. Because the time limit has expired on these records, Greco would be required to establish the existence of one of the exceptions found in 42 U.S.C. § 405(c)(5) in order to rebut the presumption of the correctness of the SSA's records. Rather than do so, Greco has merely made the conclusory assertion that she earned about $950.00 more than the SSA says she did during her 35 benefit computation years. She apparently offered no documentary evidence of these additional earnings to the Commissioner, and has therefore not cited any such evidence in the administrative record on this appeal. Accordingly, Greco has not overcome the presumption that the SSA's records of her wages are accurate. See Butts, 706 F.2d at 108 (claimant failed to carry his burden where he failed to provide any verification of allegedly omitted earnings). Compare Hollman, 696 F.2d at 15 (earnings amended where the claimant timely filed a tax return containing precise amounts and therefore fell under the "tax return" exception to the time limit).

  2. Benefit Reductions

Greco's second argument is that the Commissioner incorrectly applied the benefit formula to her case and made mathematical errors along the way. This argument is incorrect. As is demonstrated above, the Commissioner applied the formula mandated by the statutes and regulations, and correctly calculated Greco's benefits pursuant thereto. Greco nevertheless contends that the Commissioner's calculation was incorrect because it made two different deductions from the average indexed monthly earnings. However, the Commissioner was

correct to do so. As is explained above, a claimant's average indexed monthly earnings figure is reduced according to the formula found at 42 U.S.C. §415(a), in order to determine the PIA. Then, for a claimant such as Greco, who seeks to begin receiving benefits prior to age 65, a further reduction from the PIA is imposed in accord with 42 U.S.C. § 402(q)(1) and (9).

Nevertheless, Greco argues that a "strait 20%" should have been the only reduction. She apparently bases this argument on several social security articles that she attaches to her filings in this case. She has clearly misinterpreted them. Those articles start with the PIA (the number obtained after the average monthly indexed earnings are reduced in accord with section 415(a)), and express the section 402(q)(1) and (9) penalty as a percentage of the PIA. For a claimant that elects to begin receiving benefits upon reaching age 62, the articles note that the 5/9 of 1% formula means that that claimant will receive about 80% of the full PIA that they would have received if they waited until they turned 65. Thus, in arguing that the Commissioner has improperly made two reductions in computing her benefits, Greco fails to realize that the articles she relies on had assumed but not discussed the first reduction–from the average monthly indexed earnings figure to the PIA–and only discussed the penalty taken directly from the PIA. Therefore, her argument is misguided.[3]

---

[3]Greco, using her "one time 20%" reduction concept, then does her own math and somehow arrives at a monthly benefit of over a thousand dollars. Without attempting to determine precisely where she erred, the Court rejects her conclusion as inconsistent with the Commissioner's correct analysis.

III. Conclusion

The Commissioner's benefit calculation was based on the correct legal standards and was supported by substantial evidence. Accordingly, the decision of the Social Security Administration is affirmed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is directed to enter judgment and to close this case.


SO ORDERED
Dated: Brooklyn, New York
      April 16, 2008

                                        Carol Bagley Amon
                                        United States District Judge